TERRELL, Justice.
The legislature enacted Chapter 27,680, Special Acts of 1951, authorizing the construction of a Demonstration School on the campus of Florida State University. The same session of the legislature enacted Chapter 26,859, appropriating $375,000 to aid in the construction of said Demonstration School. In January 1953, the Board of Control, pursuant to Chapter 27,680 supra, and Chapter 243-, Florida Statutes 1951, F.S.A., adopted a resolution authorizing the issuance of $500,000 Demonstration School Revenue Certificates, hereinafter referred to as “Certificates,” for the purpose of supplementing the appropriation made by Chapter 26,859 .and thereby provide a fund to construct the Demonstration School as an integral part of Florida State University.
Pursuant to adoption of the resolution for issuance of the certificates the Board of Control and the Board of Public Instruction of Leon County adopted resolutions defining a form of contract for attendance of pupils of Leon County at the Demonstration School which contract was duly executed by both Boards. The resolution of the Board of Control was approved by the State Board of Education and the Board of County Commissioners of Leon County. The pertinent part of this contract stipulated that the Board of Control would provide the building and equipment, the teaching and administrative staff necessary to operate the Demonstration School, and that the Board of Public Instruction of Leon County would pay the Board of Control each year from its current revenues and other available school funds an amount equal to $141 per pupil based on the average daily attendance at the Demonstration School; provided that in no single year the amount so contributed would be less than $60,000 or more than $105,000. Other provisions were incorporated in the contract but they are not pertinent here and are not detailed. This appeal is from a decree validating the certificates.
It is first contended that the certificates are State bonds in violation of section 6, Article IX of-the Constitution, F.S.A.
The test of whether or not a certificate1 is in fact a bond of the State in violation of section 6, Article IX of the Constitution is whether or not the taxing power of the State may be called on to service or discharge it. State v. Florida State Improvement Commission, 160 Fla. 230, 34 So.2d 443.
The resolution of the Board of Control providing for issuance of the certificates to construct the Demonstration School, in part provides:
‘‘Section 7. The Board of Control covenants that it will fix and collect charges for the right to use or be served by the Project so that the revenues in each school year, beginning with the school year 1953-54 will be at least $35,000; provided, however, that in the event the Board of Control shall enter into a contract with the County Board for the payment of moneys to the Board of Control in excess of $35,000 for the right to use or be served by the Project, no part of such excess shall be deemed to be pledged to the payment of any certificates issued under the provisions of this resolution.”
“Section 16. The Board of Control' covenants that it will promptly pay the principal of and the interest on' every certificate issued under the provisions of this resolution at the places, on the dates and in the manner specified herein and in said certificates and’ in the coupons appertaining thereto, and any premium required for the retirement of said certificates by purchase or redemption, according to the-true intent and meaning thereof. Such principal, interest and premium are payable solely from the revenues of' the Project, which revenues are hereby pledged to the payment thereof' in the manner and to the extent here-inabove particularly specified.”
“Section 25. Nothing in the certificates or coupons or in this resolution shall be construed as pledging the-faith and credit of the State of Florida, or as creating any debt of the State.”
*471 The certificates on their face contain similar provisions to those recited in the resolution. The terms of the statute authorizing them is to like effect. It is therefore clear that they are payable solely from revenues of the Project, in other words, moneys paid to the Board of Control under contract by the Board of Public Instruction of Leon County for pupils "“using or being served by, or having the right to use, or having, the right' to be served by such Project.” That is to say, moneys derived from tuition fees imposed pursuant to section 243.04, Florida Statutes 1951, F.S.A., and paid to the Board of Control by the Board of Public Instruction of Leon County for use of the Demonstration School. Section 7 of the said resolution provides that not more than $35,000 of the annual payments made by the Board of Public Instruction to the Board of Control may be pledged to service the certificates. The balance so paid goes to cost of administering the Demonstration School.
The State contends that the obligation of the contract between the Board of Control and the Board of Public. Instruction of Leon County requires that funds received by the latter, from the State for current school expenses other than for salaries of instructors and costs of transportation must be applied on the annual payments to the Board of Control, and when so applied, they create an obligation of the State. We find nothing .in the contract, the resolution or the law to support this contention, nor is there the remotest suggestion that the State is obligated to make such an allotment. There is accordingly no merit to this contention. It appears to the contrary that the certificates are serviced solely from revenues paid by the Board of Public Instruction of Leon County to the Board of Control for schooling children of Leon County and that there is no obligation on the part of the State to provide any revenues to support them. ■ Hence they are not bonds of the State in violation of section 6, Article IX of the Constitution.
It is next contended that the contract between the Board of Control and the Board of Public Instruction of Leon County creates a debt of the county without an approving vote of the freeholders as required by section 6, Article IX of the Constitution.
The pertinent part of the contract between the Board of Control and the Board of Public Instruction of Leon County out of which this question arises, is as follows :
“4. The County Board hereby covenants and agrees to pay to the Board of Control in each school year, from current revenues and any' other available funds;"an amount equal to $141 per pupil based on the average daily attendance at the Project through such school year, but not less than $60,000 nor more than $105,000. On December 1, 1953, being a date subsequent to the estimated date of completion of the Project, on May 1/ 1954, and on December 1, and May 1 of each school year thereafter to and including May 1 1982, the County Board shall pay to the Board of Control one-half of the amount estimated by the Board of Control to be due for such school year, but not less than $30,000 nor more than $52,500, and within 30 days following the close of such school year, the balance, if any remaining due hereunder, * *
Said contract further provides that any funds periodically allotted the Board of Public Instruction other than instructional salaries, arid transportation, may be used to meet the obligation of the Board of Public Instruction to the Board of Control as defined in that part of the contract above quoted, which further provides that if the current revenues and other available funds to the Board of Public Instruction shall not be sufficient in any year to meet the obligation of the Board of Public Instruction, any deficiency in meeting said obligation shall be met from the current revenues or other funds first available to the Board of Public Instruction in the next succeeding year. In State v. City of Miami, 150 Fla. 270, 7 So.2d 146, we held that such a provision as the latter did not *472 violate section 6, Article IX of the Constitution. See also Dillon on Municipal Corporations, 5th Ed., p. 359, Section 196.
Despite our holding in the last cited case, appellant contends that the judgment appealed from should be reversed on authority of State v. Volusia County School Building Authority, Fla., 60 So.2d 761. We are convinced that appellant did not properly appraise the decision in this case. We were there concerned with a, statute creating the Volusia County School Building Authority with power to issue bonds, construct 'school buildings, lease them to the County Board of Public Instruction, the title thereto to vest in the Board of Public Instruction after retirement of the bonds.
In the case at bar the contract was very different and the parties to it were clothed with different powers. The evidence shows the need for the Demonstration School and the function it serves in the preparation of teachers to staff the secondary schools of the State. Such a school has in fact already existed on the campus of Florida State University for almost fifty years. It now accommodates about 300 public free school pupils whereas the one ■ proposed will accommodate about 700 pupils. It is further shown that the Board of Public Instruction of Leon County paid the Board of Control $34,424 the past year for services to its pupils in the Demonstration School and that the proposed contract will result in considerable saving to Leon County for schooling its grade pupils while it will afford Florida, State University facilities for training class room teachers.
Reduced to concrete formula the Board of Control has agreed to construct a Demonstration School at Florida State University at a cost of $875,000, $375,000 of which was provided by legislative appropriation, with which we are in no way concerned. The balance of $500,000 is provided by the proceeds of certificates issued by the Board of Control' and serviced as provided in Paragraph 4 of the Contract between the Board of Control and the' Board of Public Instruction- of Leon County, quoted elsewhere in this opinion. The Board of Control furnishes and pays for-the instructional and administrative staff and the Board of Public Instruction of Leon County secures schooling for approximately 700 -public school children. Sections three and six of the contract between the Board of Control and the Board of Public Instruction of Leon County provides that when the Demonstration School is completed the Board of Control will carry insurance sufficient to repair or reconstruct the Demonstration School in case it is damaged or destroyed and that it will continue to furnish and pay the salary of the teachers and administrative staff. For all of this we find ample authority in Chapter 27,680, Special Acts of 1951. There was also a legislative finding of their necessity. We accordingly find no basis for the contention that the contract violates section 6, Article IX of the Constitution.
It is next contended that paragraph four of the contract between the Board of Control and the Board of Public Instruction of Leon County violates section 5, Article IX and section 8 Article XII of the Constitution.
The pertinent part of paragraph 4 of said contract is quoted earlier in mis opinion and Has to do with payments by the Board of Public Instruction of Leon County to the Board of Control to meet the conditiohs of the contract. Section 5, Article IX of the Constitution has to do with the payment of a poll tax and has no relation to this case. Section 8, Article XII of the Constitution requires each county in the state to impose a tax for public free schools. The Board of Public Instruction of each county determines the amount of this tax; sections 236.25, 236.33, 236.53 and 236.18, Florida Statutes, F.S.A. It appears that the contract in question including the payments were approved by the Board of County Commissioners of Leon County and that no ad valorem taxes are involved in the transaction, so there is no merit to this question.
It is finally contended that Chapter 27,-680, Special Acts of 1951, violates Article XII of the Constitution. .
The basis of this contention is that Article XII of the Constitution provides a means for financing school buildings which *473 is exclusive of all other methods and is not complied with' in Chapter 27,680. The Demonstration School is not a part of the public free school, system but is a part of Florida State University under the direction of the State Board of Control. The purpose of Chapter 27,680 was to provide means to secure the Demonstration School as an essential part of Florida State University in order that it give class room training to prospective teachers in the public schools.
It is therefore our opinion that Chapter 27,680, Special Acts of 1951, is valid, that it does not violate Article XII or any other provision of the Constitution; that all agreements between the Board of Control and the Board of Public Instruction of Leon County pursuant to said act are valid; that the certificates challenged were regularly issued and constitute valid and binding obligations. The validating decree is therefore affirmed.
Affirmed.
' ROBERTS, C. J., and THOMAS, SE-BRING, HOBSON and MATHEWS, JJ„ concur.
DREW, J., not participating.